## PRATT v. CHRISTIE.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. BANKRUPTCY—CONVEYANCE—BONA FIDE TRANSFEREE.

Where a conveyance of property belonging to a bankrupt was not made within four months prior to the filing of his petition in bankruptcy, and the grantee had no cause to believe that it was intended as a preference, and he took the same for a valuable consideration, he was entitled to retain the property as against the bankrupt's trustee.

2. SAME—EVIDENCE.

Certain real estate of a bankrupt was heavily incumbered, and on a foreclosure sale on May 20, 1902, the property was bid in by H., acting for the mortgagor and C., who furnished the consideration. The referee's deed to the property was made to H., and delivered on May 29th, 1902, and on the same day H. executed a blank deed at the bankrupt's request, which was filled up with C.'s name as grantee. It was intended to render the same operative as of July 1, 1902, though it was not recorded until February, 1903, and the bankruptcy petition was not filed until more than four months after said July 1st. C. offered in evidence nine checks and notes for money advanced to the bankrupt between February 22 and August 12, 1902, amounting to $3,612.14, with interest, and claimed that the deed was simply a mortgage to secure such indebtedness. *Held*, that C. was a bona fide purchaser of the property for value, and was entitled to hold the same as security for the bankrupt's indebtedness to him.

Appeal from Special Term, New York County.

Action by Addison S. Pratt, as trustee in bankruptcy of John B. Roberts, against Charles S. Christie. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

W. B. Ellison, for appellant.
J. W. Shepard, for respondent.

PATTERSON, J. The plaintiff is the assignee in bankruptcy of one John B. Roberts, and as such brought this action to set aside conveyances of real estate in the city of New York, which at one time belonged to the bankrupt. The grounds upon which the action is founded are that the conveyances constituted an illegal preference, within the provisions of section 60b of the national bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), and that they were also made in fraud of the rights of the general creditors of the bankrupt, giving to the assignee in bankruptcy a right of action under sections 67e, 70a, and 70e (30 Stat. 564–566 [U. S. Comp. St. 1901, pp. 3449, 3451, 3452]) of that act. These grounds are presented in the complaint in the form of two separate causes of action. They are not inharmonious. The court below found in

favor of the plaintiff, setting aside the conveyances on the ground that they were made with intent to hinder, delay, and defraud the creditors of Roberts, and were in violation of the provisions of the national bankruptcy act, but without specifically stating in the conclusions of law anything else than that they were made with intent to hinder, delay, and defraud creditors, and that they should be set aside and discharged of record and avoided as being in fraud of creditors, and particularly of the plaintiff in this action, the trustee in bankruptcy of John B. Roberts.

We are not required to enter upon a critical examination of the provisions of the national bankruptcy act under which this action is brought. As relating to this particular case, it is entirely immaterial to the result whether there was an illegal preference given to a particular creditor, or the conveyances were generally in fraud of creditors. The question, as affecting an illegal preference, is whether it was made within the four-months period, and whether the ultimate grantee had cause to believe that it was intended as such, for, if he did not, and he was a bona fide transferee, he may keep the property transferred. Pirie v. Chicago, etc., Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171. As to the conveyances being in fraud of creditors generally, the trustee's right of action reaches back of the four-months period, and the rule of law applicable to suits in equity to set aside such conveyances applies.

Upon an examination of the record, and an ascertainment of the facts appearing in evidence, we think the findings of fact and the conclusions of law of the learned trial judge cannot be sustained. Roberts at one time owned the premises described in the complaint. There was a mortgage upon them, which was foreclosed, and a sale under the decree of foreclosure was had on the 20th of May, 1902. At the sale the premises were bid in by one James M. Hills, who took a deed from the referee in foreclosure. Hills, in the transaction, undoubtedly acted for Roberts, and subsequently conveyed the premises to the defendant, Christie, at the request of Roberts and Christie. Christie admits that Hills was acting substantially for Roberts, and alleges that he (Christie) furnished the consideration for the purchase of the property at the foreclosure sale. He alleges, however, that Hills was acting as agent or attorney of both Roberts and himself, and avers that he did not know at the time the conveyance was made to him that any illegal preference under the bankrupt law was being made. He also asserts that Roberts was indebted to him at the time the conveyance was made in the sum of $3,612.14, with interest, and the conveyance was made to him, not as an absolute deed, but simply as a mortgage to secure the payment of the indebtedness mentioned, and such future advances as he (Christie) might make for the preservation of the property.

In going over the evidence in the record, we are convinced that Christie honestly became the grantee (as mortgagee) of the premises for a consideration, and that he is entitled to hold the deed as security for the amount of his advances to Roberts. He has not sought to disguise in any way the real nature of the transaction. He admits the property was Roberts', that Hills was acting for Roberts as well

as for himself (Christie), and that his right to the property was limited to that of a mortgagee, and he has made proof of advances of money to Roberts to the extent of the lien he claims. Christie is a brother-in-law of Roberts. In 1902 there were three mortgages upon the property in question. The first was for $23,000, the second for $2,-000, and the third, which also covered additional property, for $6,000. In February one Finnigan, the owner of the second mortgage, required the payment of the amount due thereon, whereupon Roberts applied to Christie for a loan, and Christie did loan him the sum of $1,000. Thereafter Christie advanced more money by note and by check to Roberts. Roberts wished to secure Christie for the moneys so advanced, and desired to have the property bid in in Christie's name, but it was deemed advisable to have the title stand in the name of some one else, inasmuch as Christie was a resident of Canada. Thereupon Hills came into the transaction. Ten per cent. was deposited by Roberts, apparently out of moneys received from Christie, and a deed was made out to Hills, who made a conveyance in blank, in which the name of Christie was subsequently inserted. The history of this deed becomes important. That Hills was selected to hold the title for the purposes of convenience is established. The referee's deed to Hills was made and delivered on the 29th of May, 1902, and on that same day Hills executed the deed in blank at the request of Roberts. Subsequently, notwithstanding this deed in blank, it was suggested that Hills should still hold the title and give a mortgage to secure Christie for the amount of his loans, but Hills objected to that—he did not want to become liable on a bond or become a mortgagor—and thereupon it was proposed that the blank deed be filled up in the name of Christie, which was done. The attorney was directed to fill in Christie's name. We cannot escape the conviction that this was done by full authority of Roberts and Christie, and, as the attorney testifies, of Hills, and with the intention that the deed should be held as a mortgage. Although this deed was not recorded until February, 1903, it was effectually delivered to the attorney with the intention of becoming an operative instrument, fully authorized by all the parties to the transaction. As the attorney fixes the date of the completion of the deed as an intended operative instrument on the 1st of July, 1902, the conveyance does not come within the scope of the four-months preference provision of the bankruptcy law.

This leads us to the consideration of the second ground, which was that, evidently, upon which the decision of the court below was founded. Looking through the form of this transaction, and getting at its substance, the essential question is whether the indebtedness of Roberts to Christie was an actual, honest, existing one. Nine checks and notes advanced by Christie were offered in evidence. They all ranged, in dates, between February 22 and August 12, 1902. All of them, with the exception of two, were discounted by Roberts in New York, and the proceeds used—some part in the purchase of the property at the foreclosure sale, and some part (seemingly not received until after the sale) in payment of moneys received from other sources, and applied to make up the balance of the purchase

money.   It is suggested, however, and the learned court below was of the opinion, that the moneys Roberts received from Christie were payments made on account of the purchase price of some property in New Brunswick.   Christie appears to have been a debtor to Roberts in a transaction connected with real estate in the province of New Brunswick, which real estate seems to have been held in trust for Christie, Sr.   But whatever the nature of that transaction may have been, the court was not justified in finding that the indebtedness proven by the notes and checks above referred to was fictitious and did not constitute a bona fide indebtedness of Roberts to Christie, which constituted the consideration for the conveyances sought to be set aside, or that the moneys received from Christie were payments made on account of the New Brunswick real estate.   The appellant, Christie, swears that all matters connected with the New Brunswick property were settled, and the indebtedness paid off, and that the notes and checks he gave bore no relation to it.   It is true, the learned judge had the right to reject the testimony of this witness, but there is no evidence in the case of an affirmative character showing that these checks and notes given in 1902 were in fact connected with that New Brunswick property, and both Roberts and Christie swear they were not.   There may be a slight suspicion to that effect, but that is all.   We find as far back as June 18, 1902, that Christie was writing to Roberts, asking him to pay the notes, and, if he could not pay them, to give him a mortgage on the property involved in this action; and the subsequent arrangement with reference to the deed from Hills appears to be an effort to give to Christie the mortgage he was asking for in June, 1902.   It does not seem at all probable that a scheme was then being concocted to cheat the creditors of Roberts.   The evidence fairly authorizes the conclusion that there was an honest indebtedness existing from Roberts to Christie for money advanced by the latter in connection with this property; that Christie's name was filled in the deed by the attorney in July, who had full authority to do so, as the attorney of both Roberts and Christie—and, if he was not directly authorized by Hills to do so, as we think he was, then Hills was merely acting as an agent of Roberts, and was doing what his principal directed— and that, the security being thus given to Christie and received by him bona fide, he is entitled to be protected.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.   All concur.